IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

JOY HOLLING-FRY, )
)
Plaintiff, )
)
vs. ) Case No. 07-0092-CV-W-ODS
)
COVENTRY HEALTH CARE OF )
KANSAS CITY, )
)
Defendant. )

ORDER AND OPINION DENYING MOTION TO DISMISS

Pending is Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. #24). For the following reasons, Defendant's Motion is DENIED.

I. BACKGROUND

Plaintiff is insured through a health insurance plan provided through a Health Maintenance Organization (HMO) issued by Defendant Coventry Heath Care Plan of Kansas Inc. (CHC) and made available through her husband's employment. Plaintiff filed a petition in the Circuit Court of Jackson County, Missouri alleging Defendant required her to pay co-payments in amounts greater than fifty percent (50%) of the cost of providing any single service in violation of Missouri Regulation 20 C.S.R. § 400-7.100.[1] Plaintiff asserted state law claims of breach of contract, negligence per se, and unjust enrichment. Defendant removed the action on February 2, 2007, contending federal subject matter jurisdiction exists under the Employment Retirement Income Security Act ("ERISA"). On May 7, 2007, the Court denied in part Defendant's Motion to Dismiss and directed Plaintiff to file an Amended Complaint to assert claims under

---

[1] 20 C.S.R. § 400-7.100 states in part: "A health maintenance organization (HMO) may require copayments of its enrollees as a condition of the receipt of specific health care services. An HMO may not impose copayment charges that exceed fifty percent (50%) of the total cost of providing any single service to its enrollees, nor in the aggregate more than twenty percent (20%) of the total cost of providing all basic health services."

ERISA and to address Defendant's argument regarding exhaustion of remedies.

Plaintiff's Amended Complaint asserts claims brought as a class action under ERISA, 29 U.S.C. §§ 1001 et. seq., on behalf of herself and other similarly situated participants in plans providing benefits through HMOs administered by Defendant. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) authorizes private civil actions by plan participants to recover benefits due under the terms of a plan, to enforce rights under the terms of a plan or to clarify rights to future benefits under the terms of a plan. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) allows plan participants to bring actions to obtain "other appropriate equitable relief" to enforce any of ERISA's fiduciary provisions or the terms of their plan. Plaintiff's Amended Complaint again alleges Defendant required plan participants to pay co-payments (1) in amounts greater than fifty percent (50%) of the cost of providing any single service and (2) in the aggregate in amounts more than twenty percent (20%) of the total cost of providing all basic health services, in violation of both the terms of the governing plan agreements and Missouri Regulation 20 C.S.R. § 400-7.100.

On June 21, 2007, Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint, arguing Plaintiff failed to establish that she had exhausted her administrative remedies prior to filing her Amended Complaint, and, also, that Plaintiff failed to demonstrate it would be futile to require her to exhaust her administrative remedies.

## II. DISCUSSION

*Exhaustion of Administrative Remedies*

Defendant's Motion to Dismiss alleges that Plaintiff has failed to establish she had exhausted her administrative remedies prior to filing her Amended Complaint or that exhaustion would be futile. In general, a plaintiff who brings a claim under ERISA is required to exhaust her administrative remedies before bringing a lawsuit asserting a wrongful denial of benefits. See Kinkead v. Southwestern Bell Corp. Sickness & Accident Disability Benefit Plan, 111 F.3d 67, 68 (8th Cir. 1997). The exhaustion requirement serves several purposes: "giving claims administrators an opportunity to correct errors, promoting consistent treatment of claims, providing a non-adversarial

2

dispute resolution process, decreasing the cost and time of claims resolution, assembling a fact record that will assist the court if judicial review is necessary, and minimizing the likelihood of frivolous lawsuits." Galman v. Prudential Ins. Co. of America, 254 F.3d 768, 770 (8th Cir. 2001). "[W]hen a benefit plan gives the decision-maker discretionary authority to determine claims, claim denials are reviewed for abuse of discretion on the record considered by the plan decision-maker." Kinkead, 111 F.3d at 68. Thus, "through the review process the parties aid the court by 'assembling a fact record that will assist the court if judicial review is necessary[.]'" Wert v. Liberty Life Assurance Co., 447 F.3d 1060, 1066 (8th Cir. 2006) (quoting Galman, 254 F.3d at 770-71). On the other hand, exhaustion is not required if such efforts would be futile. Burds v. Union Pacific Corp., 223 F.3d 814, 817 n.4 (8th Cir. 2000). "This futility exception is particularly appropriate where the past pattern of a plan administrator, as well as its position on the merits of a current matter in litigation, reveal that any further administrative review would provide no relief." Alday v. Raytheon Co., 2006 WL 2294819 at *4 (D. Ariz. 2006).

Plaintiff's Plan provides an appeal procedure to be followed by any person complaining of an Adverse Benefit Determination. See Exhibit C, Evidence of Coverage ("EOC"), at § 9.2. The Plan defines an "Adverse Benefit Determination" as "a failure to provide or make payment in whole or in part for a benefit." Id. at § 1.4. Plaintiff's claim that she was charged an excessive co-payment–a claim that Defendant should have paid a larger amount of her medical claims–is, by definition, an Adverse Benefit Determination subject to the Plan's Appeal process.

Plaintiff claims she has alerted Defendant to its failure to comply with its own agreement and Missouri law by filing suit and by a letter dated May 10, 2007. Plaintiff's letter, though described by Defendant as merely a request for information, was sent to the *Appeals* coordinator and claims administrator, and was a request for Defendant to comply with 20 C.S.R. § 400-7.100, and for recoupment of past money wrongfully charged plus interest. See Exhibit 3. Defendant responded by letter dated June 7, 2007, stating that Plaintiff's letter did not begin the formal appeal process. See Exhibit A. Plaintiff again responded by letter dated June 12, 2007 stating that the May 10th

3

Case 4:07-cv-00092-DGK   Document 34   Filed 10/04/07   Page 3 of 5

letter was the initiation of a formal appeal and restating the relief sought. See Exhibit B. Additionally, Defendant's other correspondence with Plaintiff suggests it believes it is in compliance with the law, and therefore owes her no reimbursement. See Exhibit 1, Letter from Defendant on January 16, 2007. Further, Plaintiff alleges that Defendant has orally informed her that "Defendant would never reimburse anyone for pharmaceutical overcharges." Opp'n[2] at 3.

In a recent case in the Eastern District of Missouri involving allegations of the same violations, and with identical exhaustion arguments by the Defendant, Group Health Plan Inc. (GHP), a sister corporation of Defendant CHC with the same parent company, the court denied GHP's motion to dismiss for failure to exhaust. The court held that such exhaustion would be futile. First, the court noted that the Plan Administrator had no discretion in determining whether the defendant was violating a Missouri regulation by charging too high a co-payment. Bridgeman v. Group Health Plan, Inc., Case No. 4:07-cv-0282-TCM, Memorandum and Order at 10 (May 23, 2007). Therefore, the court reasoned, developing a factual record before the administrator would not aid the court in judicial review. Id. Additionally, the court stated that "there is nothing in the record . . . to indicate that the position of the plan administrator would change if Plaintiffs had pursued an administrative review." Id.

The Court adopts the reasoning of the Eastern District of Missouri in the present case. Here, too, deciding whether Defendant is violating Missouri Regulation 20 C.S.R. § 400-7.100 is not within the discretion of the Plan Administrator, so a developed factual record will not assist this Court. Additionally, Plaintiff's efforts to seek administrative remedies would be futile, as Defendant appears to be unwavering in its position to deny reimbursement, at least in relation to excessive pharmaceutical co-pays. Furthermore, Defendant does not seem interested in beginning the administrative review process in accordance with its own procedures.

---

[2] "Opp'n" refers to Plaintiff's Suggestions in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. # 25).

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Amended Complaint for failure to exhaust administrative remedies will be denied without prejudice.

IT IS SO ORDERED.

                              /s/ Ortrie D. Smith
                              ORTRIE D. SMITH, JUDGE
DATE: October 4, 2007          UNITED STATES DISTRICT COURT