IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| JOY HOLLING-FRY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:07-0092-CV-W-DGK ) |
| COVENTRY HEALTH CARE OF KANSAS, INC., | ) ) ) |
| Defendant. | ) ) |

**ORDER DENYING APPROVAL OF PROPOSED CLASS SETTLEMENT**

Before the Court is the parties' "Joint Motion for and Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement and Notice Plan, and Setting of a Final Fairness Hearing" (doc. 174), in which the parties ask the Court to approve their proposed settlement.

Having carefully considered all of the settlement's provisions and the parties' memorandum, the motion is DENIED. Although portions of the settlement are fair and reasonable, on the whole the settlement undervalues the class's claims. It also asks the Court to set aside its partial summary judgment order, which the Court declines to do. Consequently, the interests of the class are not better served by this settlement than by further litigation.

**Standard**

Under Rule 23(e) a court must review any "settlement, voluntary dismissal, or compromise" of the "claims, issues, or defenses of a certified class." Fed. R. Civ. P. 23(e). The court is responsible for determining that the settlement terms are fair, adequate, and reasonable, and must act as a fiduciary, "serving as a guardian of the rights of absent class members." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005). A district court

must consider four factors in determining whether a settlement is fair, adequate, and reasonable: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Id*. "The most important consideration . . . is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement.'" *Id*. at 933 (quoting *Petrovic v. Amoco Oil Co*., 200 F.3d 1140, 1150 (8th Cir. 1999)). Ultimately, the court must determine whether the interests of the class are better served by settlement than by further litigation. *In re Wireless*, 396 F.3d at 932.

## Discussion

At the outset the Court would like to commend the parties on their efforts to reach a settlement in this case. The Court also finds aspects of the settlement are fair, adequate, and reasonable. In particular, the Court approves those provisions which provide an automatic pro rata payment to 73% of the class. The Court also has no objection to those provisions which limit monetary compensation to class members with claims over ten dollars, provides for modification of plan language to clarify that copayment limitations do not apply to prescription drug benefits, and permits Coventry to amend its plans to charge a 50% copayment on future purchases of prescription drugs. Additionally, the Court finds that the proposed settlement is not a collusive settlement or a "reverse auction." *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282-83 (7th Cir. 2002).

That said, the Court has serious reservations about the proposed settlement. First, as an administrative matter the Court is concerned that it cannot determine from the existing record how much of the $2,450,000 settlement fund will actually be available to pay class members' claims. The proposed settlement requires attorney's fees and expenses, the class representative

2

award, and administrative costs to be deducted from the settlement fund before any payments are made to class members. Stip. of Settlement and Release at ¶ 26. It also states that attorney's fees and expenses will be no more than $577,713.95 and the class representative award will be $7,500, but the record is silent as to how much the administrative costs will be. Given that the administrative costs in the companion case, *Casey v. Coventry*, are in the hundreds of thousands of dollars, it appears the administrative costs here will significantly reduce the amount of money available to pay class claims. If administrative fees will be taken from the settlement fund, the parties should provide a good-faith estimate of, or a cap on, the total amount of administrative fees that will be deducted from the fund so the Court can determine how much of the settlement fund will be available to pay class claims.

Second, the Court is concerned with the provision that states "the parties have agreed that they will be jointly moving the Court to set aside its September 3, 2009 Order" in which the Court "issued its interpretation of Judge's Mummert's Order holding that the regulation applies to prescription drugs." To the degree this provision requires the Court to set aside its partial summary judgment order, conditions the parties' agreement on the Court's setting aside its order, or allows a party to rescind the agreement if the Court does not set aside its order, the Court rejects this provision.

Approving such a provision sets a poor precedent, sending a message to future litigants that they can side-step the res judicata effects of an adverse ruling by subsequently negotiating a settlement which sets aside the ruling. It also encourages litigation. By allowing a litigant, particularly a defendant, to hedge the risk of an adverse ruling it also encourages a defendant to repeatedly litigate the same issue in different courts, undermining the doctrine of issue

3

preclusion[1] and the efficient administration of justice.  While Plaintiff's counsel must have had a legitimate reason for agreeing to this provision, the Court will not approve this provision.

Third, balancing the relative strength of the Plaintiffs' case against the amount offered in settlement, the Court finds the proposed settlement undervalues the class claims.  The disputed excess copayments in this case total $13.33 million.  The value of the settlement to the class, after deducting $577,713.95 for attorneys fees and expenses, $7,500 for the class representative award, and say $200,000 for administrative costs, is approximately $1.66 million.[2]  Thus the proposed settlement gives the class members only 12 cents on the dollar for their claims ($1.66 million divided by $13.33 million is 12.4).  Given that the class has already won a significant victory in this case, partial summary judgment on the merits, and given the possibility of a large recovery for the entire class if Plaintiffs prevail after trial and appeal, the Court finds the proposed settlement provides the class members with insufficient value for their claims.  Consequently, the interests of the class are not better served by this settlement than by further litigation.

## Conclusion

The parties' "Joint Motion for and Memorandum in Support of Motion for Preliminary Approval of Class Action Settlement and Notice Plan, and Setting of a Final Fairness Hearing" (doc. 174) is DENIED.

The Court encourages the parties to confer on an alternate settlement agreement that addresses the Court's concerns.  Should the parties reach a revised agreement, the Court will

---

[1] Issue preclusion, or collateral estoppel, is an affirmative defense barring a party from relitigating an issue determined against it in an earlier action against a different litigant.  Black's Law Dictionary 279 (8th Ed. 2004).

[2] $2,450,000 in the settlement fund, minus $785,213.95 ($577,713.95 + $7,500 + $200,000) equals $1,664,786.10.

4

promptly consider it. In the meantime, the parties should prepare for a trial on the remaining issues.

The parties shall submit a joint proposed revised scheduling order to the Court on or before December 28, 2011.

**IT IS SO ORDERED.**

Date:  December 13, 2011                     /s/ Greg Kays
                                                                        GREG KAYS, JUDGE
                                                                        UNITED STATES DISTRICT COURT